[No. 13977.   Department Two.   January 17, 1918.]

## J. M. DAVIDSON, *Appellant*, v. J. E. CHILBERG *et al.*, *Respondents.*[1]

ASSIGNMENTS FOR BENEFIT OF CREDITORS—SETTLEMENT—INTEREST. An assignor of certain properties to an agent for the purpose of paying specified debts is entitled to recover of the agent interest on any sum that may remain in his hands after performing the trust.

SAME—SETTLEMENT—TERMINATION OF TRUST — EVIDENCE — SUFFICIENCY. Where a special assignment of certain properties to an agent for the purpose of paying specific debts gave authority to the agent to make sales and provided for a return of any property and sums remaining after payment of all liabilities, the evidence sufficiently shows that the trust was terminated by performance or else violated by the trustee, entitling the assignor to a distribution of the funds and property remaining, where, after the payment of all other debts, a further contract recited that the trustee had "negotiated" a sale of certain mining stock so as to release all liability on the debts for which it was assigned, and the trustee and his associations thereupon took possession of the mining company and all its assets, and transferred all the assets to a new corporation controlled by them, although there was no formal assignment of the shares; and the trust was thereby terminated.

SAME—SETTLEMENT—ACTION FOR ACCOUNTING. In an action by such assignor for an accounting from the trustee, who was an officer or in control of all the corporations and concerns holding claims, it is unnecessary to join as parties the various beneficiaries; since they were paid or had ample notice of the pendency of the action.

Appeal from a judgment of the superior court for King county, Tallman, J., entered December 11, 1916, upon findings in favor of the defendants, in an action for an accounting, tried to the court. Reversed.

*Edward Judd* and *O. L. Willett*, for appellant.

*Ballinger, Battle, Hulbert & Shorts*, for respondents.

HOLCOMB, J.—In this action to compel a final accounting by respondent J. E. Chilberg and judgment for the amount

[1]Reported in 169 Pac. 981.

found to be due thereon against Chilberg and wife upon certain transactions between the parties, the court made and entered certain findings and conclusions and an interlocutory decree, final hearing and decree to depend upon the result of the determination of two certain actions pending in the superior court of King county against appellant.

On July 7, 1910, the defendant J. E. Chilberg and the plaintiff, J. M. Davidson, entered into a contract containing the following terms: A recital that Davidson is indebted to the Scandinavian-American Bank in the sum of $28,875 and interest; is also indebted to William T. Perkins, and liable, together with Chilberg and W. H. Metson, as guarantors of certain indebtedness of the Kugarok Mining & Ditch Company. A recital that Davidson has transferred to Chilberg certain securities, later described, for the purpose of liquidating said indebtedness. A recital that there have been delivered to Chilberg the following securities: 50 shares New Washington Improvement Company, par value $5,000; 100 shares Hydraulic Contracting Company, par value $10,000; 100 shares Scandinavian-American Bank, par value $10,000; 49,399 shares Miocene Ditch Company; 2,000 shares of Goodro Mining Company; one-third of 501,000 shares Kugarok Mining & Ditch Company. A provision that Chilberg have power to sell such securities as follows: Stock of Scandinavian-American Bank at not less than $23,000; stock of Miocene Ditch Company to be sold to Pioneer Mining Company at fifty cents per share, payable one-eighth cash in November, 1910, one-eighth each year for seven years in notes payable to Chilberg or Scandinavian-American Bank. A provision that, out of the money received from such sales, Chilberg was to pay $7,500 to W. T. Perkins, pay in full Davidson's indebtedness to the Scandinavian-American Bank, and apply the balance on any liability for which Davidson, Chilberg and Metson might be liable as guarantors for the Kugarok Mining & Ditch Company. A provision that the 50 shares of the New Wash-

ington Hotel Company were to be sold for the best price obtainable. A provision that the 2,000 shares of Goodro Mining Company were to be sold at best price obtainable and applied on above liabilities, but only with consent of O. E. Sauter. A provision that Chilberg is given full authority to sell the entire interest of Davidson in the Kugarok Mining & Ditch Company at any time that the sale of fifty-one per cent of the capital stock of said corporation will pay up and liquidate the entire indebtedness of the said Kugarok Mining & Ditch Company and release the said J. M. Davidson from all further liability. A provision that Chilberg have authority to sell the stock of the Hydraulic Contracting Company and the seven notes of the Pioneer Mining Company taken in payment for the Miocene Ditch Company stock, with the approval of O. E. Sauter. A provision that, "after the payment of the indebtedness of the said J. M. Davidson to the Scandinavian-American Bank and the payment of his one-third of all the liabilities of the Kugarok Mining & Ditch Company, for which said Davidson is a guarantor, together with J. E. Chilberg and W. H. Metson, any of the securities remaining unsold, or any of the assets here transferred, or the proceeds of the sales thereof remaining shall be transferred and returned to the said J. M. Davidson." This contract was executed by Davidson, by his attorney O. E. Sauter, who had negotiated the terms of the same with Chilberg.

On June 10, 1913, another contract was entered into between Chilberg and Davidson containing the following terms: A recital of the execution of the contract of July 7, 1910, and transfer thereby of the interest of Davidson in the Kugarok Mining & Ditch Company. A recital of the authority to Chilberg to sell the interest of Davidson in the Kugarok Company. A recital that "the said J. E. Chilberg has negotiated a sale of all the interests of Davidson, Chilberg and Metson in the Kugarok Mining & Ditch Company, a corporation, whereby the said J. M. Davidson, J. E. Chil-

berg and W. H. Metson are released and discharged from all liability as guarantors of the indebtedness of the said Kugarok Mining & Ditch Company." A provision that Davidson ratifies the sale of his interest in the Kugarok company in consideration of a full discharge from all liability as guarantor or stockholder of said company; that Davidson appoints Chilberg his attorney in fact to make all transfers to such person as shall assume the debts of the Kugarok company and release Davidson from liability therefor. These two contracts of July 7, 1910, and June 10, 1913, are the ones on which all rights of the parties are based.

Chilberg, during these transactions, was one of the chief executive officers of every one of the corporations, banks, mining companies and all which are involved in this case. He was trusted implicitly by Davidson, and the latter never knew what he did until long after it was done. This is substantially what occurred: In the summer of 1910, immediately after the making of the first contract, Chilberg sold the Scandinavian-American Bank stock for $23,000, and the Miocene Ditch Company stock for $24,699.50, making a total of $47,699.50 that he received. Out of this he paid W. T. Perkins $7,500, the note of Davidson to the Scandinavian-American Bank of $29,127.30, and small loans to Davidson aggregating $600, making total disbursements amounting to $37,227.30. The balance is $10,372.20, which he admits that he has in his hands, and has had ever since 1910. The Hydraulic Contracting Company stock Chilberg never got, and the New Washington Hotel Company stock he returned to Davidson. He has in his hands undisposed of the Goodro Mining Company stock.

Respondent defended and claimed that the indebtedness as guarantor for the Kugarok Company had not been paid, and that the assets in his hands should be applied on the same.

The indebtedness of Davidson, as guarantor for the Kugarok Company, was upon two written guaranties given by him to the Miners & Merchants Bank of Nome, Alaska, one for a sum not exceeding $50,000, and the other for a sum not exceeding $25,000. Under these guaranties the Kugarok Company gave ten notes for $10,000 each and one for $2,639.67, thus exceeding the limit of credit stated in the guaranties by more than $25,000. The other indebtedness was upon a guaranty given to the Scandinavian-American Bank for an indebtedness not exceeding $50,000. Under this, notes were given aggregating $75,500, thus exceeding the limit in the guaranty by more than $25,000. None of the guaranties specifically described the indebtedness guaranteed, but simply guaranteed credit not exceeding the amount named.

The court found, that the agreements of July 7, 1910, and June 10, 1913, were entered into; that the indemnity or guaranty agreements therein referred to were executed as therein alleged; that the trustee, Chilberg, sold the stock of the Scandinavian-American Bank for $23,000, the amount shown by his accounting, and the Miocene Ditch Company stock for $24,699.50, the amount shown by his accounting; that the stock of the New Washington Improvement Company was returned to appellant at his request; that the stock of the Hydraulic Contracting Company and the Goodro Mining Company have not been sold; that the interests of appellant in the stock of the Kugarok Mining & Ditch Company had not been sold; that respondents, out of the proceeds of the sales made as above stated, paid the note of Perkins and the individual indebtedness of appellant, the Scandinavian-American Bank, and also approximately $600 loaned to appellant, leaving a balance in respondent's hands, as trustee under the trust agreement, of $10,472.20, and concluded that respondent trustee should make all efforts to sell all unsold stock within five months.

The interlocutory decree provides that all reasonable effort be made by the trustee to sell Davidson's interest in the stock of the Hydraulic Contracting Company, the Goodro Mining Company, and the Kugarok Mining & Ditch Company within five months, unless the court granted an extension of time or ordered a forced sale, and he should report any sale made to the court for confirmation or rejection; that the accounting rendered by the trustee and set forth in his answer is approved; that two suits were brought by the present owners and holders of the guaranteed indebtedness of the Miners & Merchants Bank and Scandinavian-American Bank, by the present owners and holders of the note given to evidence the same and the indemnity or guaranty agreements. And recites that, inasmuch as those suits remain undetermined, the trust has not been fully executed, and inasmuch as in this action appellant contends that the causes of action in those suits are barred by the statute of limitations and that he is not liable for the indebtedness in those suits, but that, inasmuch as respondents in this action contend that neither the statute of limitations nor any other defense is available in this action to appellant so far as regards the trust or trust property or the proceeds of the sale thereof, for the reason that the statute of limitations is inapplicable, the court further decreed:

"And it appearing to the court that in the event plaintiff in said two suits should prevail, then the matter of the said sum of $10,472.20, as well as said undisposed property covered by said trust will be practically determined, but, in the event defendant in said two actions should prevail, the defendant in this action shall then be at liberty to give the beneficiaries under said trust agreement notice of the fact that the subject-matter of the disposal of said $10,472.20 and said undisposed property, or the proceeds of the sale thereof, is hereby by the court in this action reserved for determination; and, should judgment be rendered in favor of defendant in said two actions, the same is not to be deemed as *res adjudicata* in this action as regards said trust property undisposed of, or the proceeds of the sale thereof, or

as regards said $10,472.20, but that question is hereby reserved for hearing and determination hereafter in this action, in the event defendant should prevail in said two actions. . . . That any disbursements made by defendant in this action, or any liability incurred by him, or any further liability which may be incurred by him in executing the trust conferred upon him by said agreement, be settled and determined whenever final decree shall be made and entered in this cause."

Appellant alleges that the court erred, (1) in not charging Chilberg with interest since 1910 on the funds found to be remaining in his hands since that time; (2) in ordering the sale of the Hydraulic Contracting Company stock, Goodro Mining Company stock, and the Kugarok Mining & Ditch Company stock; (3) in assuming by its interlocutory decree to fix the effect of any judgments which might be rendered in the cases of Larson and Hanscome against him; and (4) in not entering a decree requiring the assets in Chilberg's control delivered and paid over to appellant.

As to the first error, whether or not the trustee is liable for interest at the legal rate as demanded upon the $10,472.20 admittedly in his hands since about July, 1910, depends upon whether or not appellant is entitled to have that fund paid over to him. If so, he is entitled to interest upon it.

This was not a general assignment for creditors out of which the action arose, but was a special assignment of certain properties to Chilberg as agent for the purpose of paying certain specified debts. As confidence and discretion were reposed, it created a special trust. The contract provided that, after the payment of the indebtedness of appellant to the Scandinavian-American Bank and the payment of his one-third of all the liabilities of the Kugarok Mining & Ditch Company, for which appellant is guarantor, together with J. E. Chilberg and W. H. Metson, any of the securities remaining unsold, or any of the assets thereby transferred or the proceeds of the sale thereof remaining, shall be transferred and returned to appellant.

The Hydraulic Contracting Company stock was never delivered to Chilberg, and he, therefore, never had any trust in it. The New Washington Improvement Company stock was returned to Davidson at his request, and the trust as to that thereupon ceased. The Goodro stock was never disposed of, never applied to any of the debts of appellant, and remains in the trustee's hands. As to the Kugarok company's stock, the evidence shows that, in 1913, Mr. Chilberg told Sauter, appellant's attorney, that it had been disposed of to the Pioneer Mining Company, which was to relieve the guarantors of their liability. The Pioneer Mining Company, in 1913, took possession of all of the physical assets of the Kugarok Mining & Ditch Company, and since that time has worked the Kugarok properties and sold many or most of its assets. About the time it took possession of the physical assets, it took up the notes of the Kugarok Mining Company to the Miners & Merchants Bank at Nome and the Scandinavian-American Bank at Seattle. Whether or not it did this under an agreement that it was to assume an indebtedness of the Kugarok company in agreement with Chilberg and Metson is not clear. But as early as 1910, Metson, the other one-third owner of the Kugarok company, together with Chilberg and appellant, sold and transferred all his interest in the Kugarok company to the Pioneer Mining Company and received a contract releasing him from any further liability for the Kugarok company's indebtedness. Metson has, since that time, been an officer and large stockholder in the Pioneer Mining Company. Chilberg is one of the principal officers of the Miners & Merchants Bank at Nome, the Scandinavian-American Bank at Seattle, the Kugarok Mining & Ditch Company, and the Pioneer Mining Company. There appears to have been no transfer of the certificates of shares of stock of appellant or of Chilberg in the Kugarok Mining Company to the Pioneer Mining Company or to any one else. Nevertheless, the Pioneer Mining Company has apparently had complete ownership, manage-

ment and control of the entire assets of the Kugarok com-
pany in Alaska since 1913. It would seem clear, therefore,
that, whether or not the stock merely as paper evidence of
appellant's interest in the Kugarok Mining Company has
ever been sold, assigned and transferred by Chilberg as trus-
tee, all the material interests of appellant have been disposed
of, and the fact that the stock remains outstanding is im-
material. It is apparent that all of the interests of appel-
lant in the Kugarok company have been either disposed of
or dissipated by the trustee. No one else could have done it.
It was entirely in his control from the time that it was so
given to him by appellant. If the indebtedness of the Kuga-
rok company, guaranteed by appellant to the extent of
$75,000, has not been paid off while so disposing of the
company's assets, the disposition thereof by the trustee was
certainly so effectual as to forever preclude and prevent any
recovery of the indebtedness of that company out of its
assets. Taking into consideration the agreement of June 10,
1913, reciting a "sale negotiated" by him, although he now
explains that "negotiated" did not mean "consummated,"
and his oral statements at least as testified to by Sauter, we
can but believe that all appellant's "interest" was in some
way disposed of. It is to be noted also that the plaintiffs in
the two actions upon the notes of the Kugarok company and
the guaranties of its indebtedness are employees of Chilberg
or his companies, and that, while Chilberg and Metson are
also guarantors on the written guaranties of those indebted-
nesses, neither Chilberg nor Metson has been sued, but
Davidson alone.

We think the evidence amply justified a finding and con-
clusion contrary to that of the court below, viz.: that the
trustee has either performed his trust or has violated it, and
that the appellant is entitled to the distribution of the funds
and property remaining in the trustee's hands. The contract
specifically provided for the remaining property and funds
to be paid over to appellant upon the consummation of the

trust agreement. This has not been done, and the trustee has in his hands the sum heretofore mentioned and the Goodro Mining Company stock. He is therefore liable for the sum mentioned, with interest at the legal rate of six per cent from August 1, 1910.

As to the second error complained of, it suffices to say that the court erred in ordering the sale of any of the stock, for the reason that the trustee never had the Hydraulic Contracting Company stock and had no duty concerning it. The Kugarok Mining & Ditch Company stock is either sold or all the assets representing it sold, which amounts to the same thing, and the Goodro Mining Company stock, under the clear terms of the contract, should be returned to the appellant upon the completion or violation of the terms of the agreement.

It is not necessary to determine the question whether the court had authority, as urged in the third ground of error, to assume in advance the effect of any judgments which might be rendered in the case of Larson and Hanscome against Davidson.

It is claimed by respondents that appellant should not recover in this action for the reason that he did not make the beneficiaries of the trust under the agreement of July 7, 1910, parties to his action, they having, it is shown, known of and assented to the assignment. These various beneficiaries are shown to be in this situation: One of them—Perkins—has been fully paid and has no further interest in the matter. The others are all companies in which Mr. Chilberg himself has a direct and, in some instances, controlling interest, such as president of the corporation. If they were entitled to have their rights adjudicated in this action, manifestly they had ample notice of the pendency of the action and of its object and could have intervened and set up their rights. Appellant's rights herein depend wholly upon Chilberg as his agent and trustee. Under the clear terms of his contract and under the evidence of record, we are con-

vinced that appellant is entitled to recover the $10,472.20, with interest, and the Goodro Mining Company stock, together with his costs.

Judgment is so ordered.  Reversed.

ELLIS, C. J., MOUNT, and CHADWICK, JJ., concur.